## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

JOSE DANIEL VALADEZ III,

   *Plaintiff.*

v.

CITY OF SAN ANTONIO.

   *Defendant.*

Case No.

Hon.

---

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Jose Daniel Valadez III, by and through his attorneys, complaining of Defendant, the City of San Antonio, respectfully allege as follows:

## INTRODUCTION

1. Jose Daniel Valadez III, a local street performer, brings this civil action for damages, injunctive, and declaratory relief against the City of San Antonio.  Defendant threatens Plaintiff with arrest if he engages in street performance in *any* public outdoor space in downtown San Antonio with *any* amplification of noise pursuant to an unconstitutional City policy targeting street performers.  To threaten Plaintiff (and other street performers) with arrest for the peaceful exercise of the most fundamental right afforded every United States citizen, the right to of free speech through artistic expression, blatantly violates Mr.

1

Valadez's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.

2.      This case arises from the City of San Antonio's Downtown Street Performers Policy ("the Policy") that prohibits most forms of artistic expression from public outdoor spaces located downtown that are owned by the City. Enforcement of this Policy deprives Plaintiff of his federal constitutional rights to freedom of expression and due process of law causing irreparable harm to Plaintiff. While the City suggests that street performers "enhance the vibrancy, vitality and ambience of Downtown San Antonio," street performers, unlike every other private citizen, are not permitted to *any* amplified expression at *any* city-owned location that serves *any* purpose.

3.      By this action, Plaintiff seeks a declaration that the policy enacted and executed by Defendant banning street performers from public downtown locations, and from the use of even reasonable amplification of any noise, violates the First and Fourteenth Amendments and is unconstitutional.   Plaintiff also seeks injunctive relief to prohibit enforcement and retaliatory conduct in the future, as well as damages to compensate him for the damages caused by the Defendant.

## JURISDICTION AND VENUE

4.      This is a civil rights action for temporary, preliminary, and permanent injunctive relief pursuant to 42 U.S.C. § 1983, as well as damages, based upon the

ongoing violations by the Defendant of the rights secured to Plaintiff by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

5.     This Court has Jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 (in that this action poses a federal question, as it arises under the Constitution.

6.     The events that give rise to this lawsuit took place in the City of San Antonio, County of Bexar, State of Texas.

7.     Venue is appropriate in the Western District of Texas pursuant to 28 U.S.C § 1391(b) since the acts providing the legal basis for this complaint occurred in the City of San Antonio, County of Bexar, State of Texas.

## PARTIES

8.     Plaintiff, JOSE DANIEL VALADEZ III ("Plaintiff"), is a street performer, a law-abiding citizen of the United States and a resident of the City of San Antonio, County of Bexar, State of Texas.

9.     Defendant, the CITY OF SAN ANTONIO ("Defendant"), is a home rule municipality formed and governed under the laws of the State of Texas.  The Defendant City is acting under color of state law, and is a person for the purposes of a 42 U.S.C. § 983 action.  The City is responsible for the policies, practices, and procedures of its police department.

## STATEMENT OF FACTS

### A.    *Relevant Facts Concerning Plaintiff*

10.    Plaintiff, an 11-year street performer, generally presents a non-commercial comedic break-dancing routine during the weekend in downtown San Antonio.  Plaintiff uses a speaker, microphone, and music in the performance of his artistic expression.[1]

11.    Since 2017, the City of San Antonio started expelling Plaintiff from various downtown outdoor public spaces, which upon information and belief, is when Defendant enacted and enforced its policy targeting street performers.

12.    Plaintiff was arrested in 2017 following enforcement of Defendant's street performer policy.  Plaintiff was detained just a week ago also following enforcement of Defendant's street performer policy.  In between both seizures, Plaintiff has been asked to leave every public space downtown or face deprivation of liberty.

13.    Plaintiff is concerned that the interactions are intensifying and must seek intervention from this Court.

14.    **Plaintiff's performance of artistic expression is unquestionably protected by the First Amendment.**    Plaintiff will continue his street

---

[1]    For context, one of Plaintiff's routines can be viewed online at https://www.youtube.com/watch?v=aMVXv_MzDC4&feature=youtu.be.

performances at locations with other vendors and members of the public are permitted. He will continue to use amplification in a reasonable manner. He has never been told that his amplification is at an unreasonable level. He tried to comply with the City's policy targeting street performers—even by going to Travis Park—but the Policy is not narrowly tailored and does not serve any governmental interest that is not otherwise already served by ordinance, statute, other law or regulation.

15.    Plaintiff is in constant fear of being detained or arrested for simply exercising his constitutional rights.

**B.    *The City of San Antonio's Downtown Street Performers Policy***

16.    The City of San Antonio has a "Downtown Street Performers Policy" that "establishes guidelines of what is allowed . . . in Downtown San Antonio." **Ex. A**. The Policy declares street performing is "a public amenity that enhances the vibrancy, vitality and ambience of Downtown San Antonio." *Id.* at 1.1. "The City of San Antonio encourages the performance of non-commercial artistic expression at downtown sidewalks, plazas and parks." *Id.*

17.    The Policy goes on to define "**Street performance**" as "the practice of performing in designated areas, for voluntary donations" including "non-amplified musical performances and other types of personal entertainment." *Id.* at 3.3. "**Street Performer**" is defined as "the person presenting an artistic expression

in the form of music, dance, acrobatic, comedy, singing, musical performance or other expressive activities." *Id.* at 3.4.

18. The Policy defines "Permitted Areas" as "**All City of San Antonio controlled downtown public pedestrian spaces on sidewalks in public right of way and City owned parks**." *Id.* at 4.1. (emphasis added). The Policy then goes on to *exclude* the following locations:

    a.    River Walk

    b.    Alamo Plaza

    c.    Main Plaza

    d.    Any other outdoor location "owned and controlled by the City of San Antonio **for other purposes** such as the Convention Center, Alamodome, City Hall, Market Square, La Villita, and the Commerce St Bridge[.]" *Id.* (emphasis added).

19. The Policy establishes "Preferred locations" as certain areas of Houston Street and **Travis Park**. *Id.* at 4.2. Street Performers are also not permitted to use "amplification of any kind." *Id.* at 6.5.

20. While the Policy attempts to incorporate the City of San Antonio's ordinance, Noise nuisance enumeration, the Policy is far more restrictive than the ordinance. The ordinance is attached as **Ex. B**.

6

21.    The Ordinance permits all reasonable noise.   Amplification only comes into question if the noise is unreasonable.  *See id.* at Sec. 21-52(a) ("The following acts . . . are unlawful and in violation . . . when such acts are done or accomplished or carried in such a manner, or with such volume, intensity, or with continued duration, so as to annoy, to distress, or to disturb the quiet, comfort, or repose of a person of reasonable nervous sensibilities . . . .").

22.    The Policy, on the other hand—which only applies to street performers (or those "presenting an artistic expression in the form of **music**, **dance**, acrobatic, comedy, **singing**, **musical performance** or other expressive activities"), completely prohibits *all* amplified noise.

23.    San Antonio enforces the Downtown Street Performers Policy by having law enforcement expel street performers from public outdoor spaces in downtown San Antonio.   If street performers do not leave, they risk citation, detention, arrest, and other deprivation of liberty.

## C.    *Plaintiff Sought Clarification of Policy from City in 2018*

24.    Following his 2017 arrest following his street performance, Plaintiff became aware of the City's policy targeting street performers.  Recognizing that the policy was far more restrictive than any ordinance, law, or regulation concerning noise nuisance and access to outdoor public spaces, he wanted to raise awareness to the City.

7

25.    Plaintiff reached out to the San Antonio Policy Department and spoke to representatives of City Council.  Letters from the City demonstrating Plaintiff's attempts for clarification are attached as **Ex C**.  Defendant did not provide any clarification other than to state that the Policy is enforceable and Plaintiff and other street performers are not permitted to perform at most downtown locations and cannot use *any* amplification (while citizens are otherwise permitted downtown and to use reasonable amplification).  The City continued to enforce the overly broad, vague, and unconstitutional policy.

26.    Throughout 2018, 2019, and 2020, Plaintiff was repeatedly told to leave downtown public spaces or risk detention and arrest.  These interactions did not arise because Plaintiff was violating any ordinance.  Instead, Plaintiff is repeatedly expelled because he is not in compliance with the City's Downtown Street Performer Policy (either through location or because of some sort of amplification).

**D.    *Plaintiff's December 12, 2020 Detention***

27.    On December 12, 2020, Plaintiff was unlawfully detained and falsely cited for noise nuisance at Travis Park, a location designated by Defendant's Policy as a "preferred location" for street performers.  As Plaintiff began his street performance, Defendant's law enforcement officer approached him and told him he had to leave because he was playing music as part of his routine.  Plaintiff

immediately stopped his routine and questioned why he had to leave.  The officer told him it was because he was not allowed to have *any* amplification under the City's Street Performer Policy.  Plaintiff asked to speak with a supervisor.  The supervisor informed Plaintiff that he was not allowed to perform at Travis Park with any amplified noise.

28.   Plaintiff, now being expelled from the one place he thought the City's Policy permitted artistic expression, wanted to again raise his concerns with the City.  Plaintiff politely asked the supervisor for his badge number.  The supervisor asked Plaintiff for his name.  When Plaintiff asked why that was necessary, the supervisor detained Plaintiff unlawfully and placed him in the back of a squad car for 15 to 20 minutes.

29.   After Plaintiff provided his name, the supervisor provided Plaintiff with two choices: take a citation for a noise violation or be booked into jail. Plaintiff accepted the citation, was released, and left Travis Park.

**E.   *Plaintiff's December 22, 2020 Agreement with the City of San Antonio*[2]**

30.   On December 19, 2020, Plaintiff's counsel provided a letter to the City Attorney informing it of Plaintiff's intent to seek a temporary restraining order and to pursue this litigation.  The parties conferred, and on December 22,

---

[2] The events in Section E occurred after Plaintiff signed his original verification.  Plaintiff file a supplemental verification at a later date.

2020, entered into a temporary agreement that permitted that was supposed to allow Plaintiff to engage in protected speech through busking at all locations that were traditionally open to the public for expressive purposes—so long that he complied with local ordinance and law. The agreement is attached as **Ex. D**.

31.    Plaintiff engaged in busking in downtown San Antonio on December 25-27, 2020, and January 1-3, 2021.   While at Alamo Plaza—a predominate location expressive views—Plaintiff was threatened with citation and arrest each day he busked there.  Initially, law enforcement filmed him from afar—presumably for purposes of this litigation—which clearly has a chilling effect on Plaintiff's freedom of expression.   Then, law enforcement would approach Plaintiff and instruct him to leave.

32.    When Plaintiff would challenge law enforcement's reliance on an unconstitutional street performer's policy, they would accuse him of violating the public nuisance ordinance.  When he would tell them that he checked the decibel levels before each performance to make sure he was at a reasonable level, they would accuse him of having the crowd block sidewalks or suggest he was panhandling in violation of a solicitation ordinance (which bans "aggressive"

solicitation).  The most recent interaction, occurring on January 2, 2021, can be found on YouTube in its entirety.[3]

33.     The City of San Antonio clearly seeks to keep Plaintiff from engaging in artistic conduct and protected speech in downtown San Antonio despite allowing self-proclaimed preachers to share scripture in downtown plazas,[4] Texas Freedom Force to stand guard at the Alamo bearing arms,[5] and activists and supporters of President Trump to hold rallies.[6]

<u>COUNT I</u>
<u>VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983</u>
<u>(Procedural and Substantive Due Process)</u>

34.     Plaintiff incorporates herein all the prior allegations.

35.     Under color of state law and through a municipal policy, practice, or custom, Defendant deprived, and continues to deprive, Mr. Valadez of his right to substantive due process of law under the Fourteenth Amendment.

---

[3] https://www.youtube.com/watch?v=LnyC177FZAs&feature=youtu.be
[4] Kate Carlson, *Acceptance of Atheism Promoted in Front of Alamo by Secular Groups from Across Texas*, SAN ANTONIO EXPRESS NEWS, Aug. 3, 2016, https://www.expressnews.com/news/local/article/Acceptance-of-atheism-promoted-in-front-of-Alamo-9114450.php.
[5] Cody King, *Group of Armed Men Seen Standing Guard in Front of the Alamo Centoaph Overnight, Policy Say*, KSAT.COM, May 30, 2020, https://www.ksat.com/news/local/2020/05/30/group-of-armed-men-seen-standing-guard-in-front-of-the-alamo-cenotaph-overnight-police-say/.
[6] Mark Dunphy, *Pray for us: Alamo Rally Delayed after March for Trump Bus Tour gets Stuck in Texas Snowstorm*, MYSANANTONIO.COM, Dec. 31, 2020, https://www.mysanantonio.com/news/local/politics/article/March-for-Trump-bus-tour-stuck-in-Texas-snowstorm-15838742.php.

36.     Plaintiff possesses a fundamental liberty interest, protected by the Due Process Clause, in entering and remaining in outdoor public spaces owned by the City of San Antonio for the purposes of expressing protected speech.

37.     The City's attempts to ban Plaintiff and other street performers from these public spaces unconstitutionally infringes those protected fundamental liberty interests because it burdens those interests and is not narrowly tailored to advance a compelling governmental interest.

38.     The City does not have any reasons as to banning Plaintiff, other than the fact that he is a street performer and uses amplification in his performance. Plaintiff is not permitted to challenge these expulsions without risk of arrest, and is not entitled to any hearing related to the expulsions, and no appeal therefrom. Therefore, the City denied, and continues to deny, Plaintiff his procedural due process of law, unconstitutionally depriving him of his First Amendment rights.

39.     The requirements of procedural due process apply to the threatened deprivation of liberty deserving of the federal and state constitutions.

40.     The Policy restricts the rights of street performers to public spaces and to more restrictive noise requirements without any procedure or due process.

41.     Plaintiff is repeatedly denied access to public spaces, and the ability to perform his artistic expressions without any ability to challenge the outcome.  His

only option is to get cited, or arrested for an ordinance violation, but it does nothing for enforcement of the City's policy.

42.     The Policy specifically targets street performers without any ability to challenge the Policy's application or enforcement.

43.     The City's Policy does not meet constitutional requirements of due process.

44.     As a proximate result of the illegal and unconstitutional acts of Defendant, Plaintiff was harmed and suffers damages for humiliation and embarrassment.

**COUNT II**
**FIRST AMENDMENT AND 42 U.S.C. § 1983**
**(Violation of First Amendment Rights)**

45.     Plaintiff reallege and incorporate herein by reference the allegations contained previously and subsequently in this Complaint.

46.     Under color of state law and through a municipal policy or custom, the Defendant deprived, and continues to deprive, Mr. Valadez of his right to freedom of expression, including through expressive conduct, his freedom of protected speech in public spaces where others are permitted to be and speak.

47.     Defendant's policy of banning street performers from outdoor public spaces where non-street performers can be is a prior restraint on the exercise of these rights, and its application, and threatened application, to Mr. Valadez

exercising such rights in public outdoor spaces in downtown San Antonio (which locations are traditional public forums). The ban is not narrowly tailored to serve any compelling governmental interest and fails to leave open ample alternative channels of communicating Plaintiff's messages.

48.     Since the Policy is clearly directed only at street performers engaged in expressive and artistic conduct, the Policy is not content-neutral. Rather, in application, the policy permits and encourages official discrimination among speakers based on the content of their speech and does so without being narrowly tailored to advance a compelling governmental interest.

49.     The City's Policy of banning street performers from most public locations downtown without amplification, and all locations downtown if there is any amplification, is unconstitutionally overbroad and vague, delegating to a wide range of city employees effectively unrestrained discretionary authority to ban any individual engaged in artistic expression from any or all outdoor public spaces owned by the City, merely because the individual's conduct is subjectively viewed by a city employee as being a non-commercial performance of artistic expression by a private citizen.

50.     As Plaintiff's experiences show, the City's Street Performers Policy sweeps within it an unreasonably broad range of protected First Amendment activity that, despite enjoying heightened protection under federal law, could

14

nonetheless be viewed as unacceptable because performance of artistic expression is only permitted in certain locations if not amplified, and not accepted anywhere if amplified—without regard as to whether the amplification violates ordinance, laws, or regulation governing noise nuisance.  In essence, reasonable amplification is only illegal if it is of non-commercial artistic expression.

51.     The threat of being arrested and banned from public spaces owned by the City for engaging in artistic expression imposes a significant chilling effect on any individual who wishes to exercise the First Amendment rights of free expression but reasonably fears deprivation of liberty should the individual run afoul of the vague prohibitions of the City's Policy.

52.     The unconstitutional overbreadth and vagueness of the City's Street Performer Policy, coupled with its chilling effect on First Amendment rights, renders the policy facially unconstitutional and invalid in all applications.

### COUNT III
### FIRST AMENDMENT AND 42 U.S.C. § 1983
### (Retaliation in Violation of First Amendment)

53.     Plaintiff realleges and incorporate herein by reference the allegations contained previously and subsequently in this Complaint.

54.     Plaintiff engages in constitutionally protected conduct, as is outlined herein, including but not limited to artistic expression through street performances in public spaces in a reasonable manner.

55.    Defendant's actions to ban or prohibit Plaintiff constitute unlawful retaliation against him for his exercise of his First Amendment rights to free expression.  The conduct of the Defendant violates, and was taken in retaliation for, Plaintiff's exercise of his right First Amendment right to be present and perform in public parks, plazas, and other public forms.  Defendant does not have a valid time, place or manner regulations restricting Plaintiff's expressive activities.

56.    The citation and physical restraints placed on Plaintiff for engaging in artistic expression in public in violation of the City's Street Performer Policy infringes upon his First Amendment rights.

57.    As a direct result of Defendant's unlawful conduct, Plaintiff has suffered violations of his First Amendment rights. Plaintiff is afraid and apprehensive that he will continue to be subject to Defendant's unlawful efforts to intimidate Plaintiff from engaging in his First Amendment protected activity in the public (even at the City's "preferred location" of Travis Park).

58.    As a direct and proximate consequence of Defendant's unlawful actions, Plaintiff has suffered damages, including loss of his constitutional rights, pain, suffering, humiliation and embarrassment. Plaintiff is entitled to damages against Defendant as permitted by law.

**COUNT IV**
**FOURTH AMENDMENT AND 42 U.S.C. § 1983**
**(Violation of the Right to Be Free from Unreasonable Seizure)**

59.     Plaintiff realleges and incorporates herein by reference the allegations contained previously and subsequently in this Complaint.

60.     The acts by Defendant describe above constitute violations of Plaintiff's right to be free from an unreasonable seizure as guaranteed by the Fourth Amendment to the U.S. Constitution.  Defendant seized and handcuffed the Plaintiff for purported violations of a noise nuisance ordinance despite the fact that Plaintiff was free to go, but only detained and threatened with jail after questioning enforcement of the Street Performer Policy in Travis Park.

61.     As a direct result of Defendant's unlawful conduct, Plaintiffs have suffered violations of his Fourth Amendment right. Plaintiff is afraid and apprehensive that he will continue to be subject to Defendant's unlawful efforts to intimidate Plaintiff from engaging in his First Amendment protected activity in the public for a which are the grounds of Travis Park.

62.     As a direct and proximate consequence of Defendant's unlawful actions, Plaintiff has suffered damages, including loss of his constitutional rights, pain, suffering, humiliation and embarrassment. Plaintiff is entitled to damages against Defendant as permitted by law.

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Equal Protection)

63.     Plaintiff incorporates herein all the prior allegations.

17

64.     Plaintiff is being attacked for his protected conduct as outlined herein.

65.     Defendant does not remove or threaten citizens in public forums engaging in in non-artistic expression.  That is because those citizens that are not engaged in artistic expression are not subject to the restrictive Street Performer Policy.

66.     All the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourteenth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

67.     As a proximate result of the illegal and unconstitutional acts of the Defendant, Plaintiff was harmed and suffered damages for his humiliation and embarrassment.

## COUNT VI
## DECLARATORY RELIEF

68.     Plaintiff realleges and incorporates herein by reference the allegations contained previously and subsequently in this Complaint.

69.     Mr. Valadez seeks declaratory relief that Defendant violated his rights under the First, Fourth, and Fourteenth Amendments, as described above.

70.     Defendant deprived Plaintiff of his federal constitutional rights of freedom of expression and due process of law, causing irreparable harm to

Plaintiff.   Through continued enforcement of their policy targeting street performers, Defendant threaten further violations of these same rights.

71.    Mr. Valadez is thus entitled to a declaration, pursuant to 28 U.S.C. § 2201, that his rights arising under the Constitution have been violated by Defendant's actions and that the City's Policy is facially unconstitutional and as applied to him.

## COUNT VII
## INJUNCTIVE RELIEF

72.    Plaintiff realleges and incorporates herein by reference the allegations contained previously and subsequently in this Complaint.

73.    Defendant engaged in a course of unlawful conduct aimed at deterring and preventing Plaintiff from exercising his First Amendment right as a street performer in downtown San Antonio.   As a party of that unlawful course of conduct, Defendant repeatedly orders Plaintiff to leave public spaces where he is otherwise entitled to be.

74.    Mr. Valadez seeks an injunction stopping the enforcement of the City's Street Performer Policy.   Specifically, Plaintiff seeks to stop the ban of street performers from all outdoor public locations if street performers are not in violation of any other ordinance, law, or regulation.   Plaintiff also seeks to enjoin enforcement of the City's Policy banning all street performances with any amplification if the performance is otherwise not in violation of any other

ordinance, law, or regulation. The City's Policy restricts any type of noise as it relates to the performance of artistic expression.

75. Application of the Defendant's Policy serves no legitimate government interest. Instead, the policy removes street performers from downtown public spaces, and confines those street performers that do not use any amplification to Houston Street or Travis Park.

76. Plaintiff will continue performing in downtown San Antonio in places where he is allowed to be, and in compliance with other local rules and ordinance. However, because he is a street performer engaging in artistic expression, he will be denied access to various public spaces or face threat of arrest or deprivation of liberty.

77. Plaintiff has suffered irreparable harm and, absent extraordinary relief from this Court, will continue to suffer irreparable harm by being subject to continued unwarranted and unlawful violations of his First, Fourth, and Fourteenth Amendment rights. Damages will not be an adequate remedy at law because damages cannot adequately compensate Plaintiff for his loss of his fundamental Constitutional rights.

78. An actual controversy has now arisen and exists between Plaintiff and Defendant regarding the challenged policies, practices or customs implemented

and engaged in by Defendant with respect to Plaintiff's expressive activity as a street performer.

79.    Plaintiff contends that Defendant is engaging in unconstitutional conduct in an apparent effort to harass and intimidate him and drive him from the public forums of downtown San Antonio.

80.    Plaintiff desires and request a judicial determination of his Constitutional rights and the Constitutional limitations of conduct by Defendant, and specifically that Plaintiff's contentions regarding the First Amendment protected nature of his activity, as set forth above, is correct.

81.    This declaration is necessary and appropriate at the present time in order to set at rest the Constitutional rights and obligations of the parties.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Jose Daniel Valadez, demands judgment and pray for the following relief, against the City of San Antonio:

a.  A Declaration from this Court that the Street Performer Policy, to the extent it conflicts with other regulations or ordinances of ordinary citizens, is a violation of Jose Daniel Valadez's and other street performers' First, Fourth, and Fourteenth Amendment rights;

b.  An Order enjoining the Defendant from unconstitutionally banning Jose Daniel Valadez and other street performers from performing at

public spaces where others are permitted to expressive views if no other regulations or ordinances are being violated;

c. Full and fair compensatory damages in an amount to be determined by a jury;

d. Punitive damages in an amount to be determined by a jury;

e. Reasonable attorney's fees and costs of this action; and

f. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully Submitted,

**GRABLE GRIMSHAW MORA PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@ggm.law
**AUSTIN M. REYNA** (*pending*)
Texas State Bar No. 24118645
austin@ggm.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332