UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOSE DANIEL VALADEZ III,**

     *Plaintiff*,

**v.**                                                                     **Case No. SA-21-CV-0002-JKP-RBF**

**CITY OF SAN ANTONIO, et al.,**

     *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a *Motion to Dismiss Plaintiff's Second Amended Complaint and Motion for a More Definite Statement in the Alternative* (ECF No. 45) filed by Defendant George P. Bush, Commissioner of the General Land Office of the State of Texas ("the Commissioner"). With Plaintiff's response (ECF No. 47) and the Commissioner's reply (ECF No.48), the motion is ripe for ruling. For the reasons that follow, the Court grants the motion in part.

### I. BACKGROUND[1]

The Court previously summarized the background based upon Plaintiff's original complaint when it denied his motion for temporary restraining order and preliminary injunction. Since then, Plaintiff has filed two amended complaints, the first (ECF No. 26) added the General Land Office of the State of Texas ("GLO"), a defendant subsequently voluntarily dismissed by Plaintiff, *see* ECF No. 35, when confronted with a motion to dismiss (ECF No. 34). Through an unopposed motion to amend, Plaintiff added a number of new defendants in his Second Amended Complaint (ECF No. 38) ("SAC"), including the Commissioner, in his official capacity only. *See* SAC ¶ 11. Plaintiff brings suit under 42 U.S.C. § 1983 for alleged violations of the United States Constitution. *See id*. ¶ 6.

---

[1] The facts are essentially uncontested.

To put context with the procedural and factual issues raised by the Commissioner, the Court

summarizes various aspects of the SAC. In introductory paragraphs, the SAC connects the City of

San Antonio with the Commissioner and sets out why Plaintiff pursues this action:

> 2. The City of San Antonio, in coordination with Texas Land Commissioner George
> P. Bush and others, ban all street performers from any downtown location open to
> the public if that location is or intended to be occupied by tourists and vendors, and
> if city officials interpret the purpose of the performance is for voluntary donations.
> The is not by ordinance or law, but by policies, practices, and custom that results
> in street performers being expelled and banned from public spaces, arrested, jailed,
> and criminally charged.
>
> 3. This lawsuit seeks to stop San Antonio's unconstitutional practice and to restore
> the First Amendment freedoms of street performers engaged in artistic expression
> in downtown San Antonio.
>
> 4. Jose Daniel Valadez III, a local street performer, brings this civil action to chal-
> lenge—facially and as-applied—the constitutionality of the City of San Antonio's
> Downtown Street Performers Policy ("the DSPP"), Defendants' interpretation and
> enforcement of the DSPP, to cease Defendants from unlawful prior restraint of
> Daniel's protected speech at San Antonio's Market Square and Alamo Plaza, and
> to prevent prospective application of policies, practices, and custom used to indef-
> initely exclude Daniel from these locations despite not violating any statute or or-
> dinance.
>
> 5. By policy and practice, Defendants unlawfully violated, and will continue to vi-
> olate, the First Amendment, Fourth Amendment, and due process rights of Daniel,
> other street performers, and all citizens of San Antonio who may desire to use the
> Market Square and Alamo Plaza as a forum for free expression or to petition their
> government for redress of grievances through street performance.

SAC ¶¶ 2-5.

The SAC identifies himself as "a break dancer, peaceful protestor, law-abiding citizen of

the United States, and a resident of San Antonio" who "regularly dances at traditional public fo-

rums owned or controlled by the City of San Antonio or the Government Land Office." *Id*. ¶ 9. In

identifying the City of San Antonio (hereinafter "the City"), Plaintiff states that "[t]he City is re-

sponsible for the DSPP, its enforcement, and application" and it "views street performers as dis-

ruptive to its downtown business model and implemented the DSPP to give its officials the ability

to permanently exclude street performers engaged in artistic expression by suggesting the purpose

of certain street performances are for voluntary donations." *Id.* ¶ 10. Plaintiff identifies the Commissioner as follows:

> Defendant GEORGE P. BUSH ("Defendant Bush") is the Commissioner of the oldest state agency in Texas, the Government Land Office, and upon information and belief, controls Alamo Rangers and portions of the Alamo Plaza. Defendant Bush is sued in his official capacity only. Defendant Bush has a separate policy, practice, or custom to unconstitutionally suppress street performers' artistic expression. Defendant Bush works in coordination with Defendant City to enforce the DSPP and other policy, practice, or custom to unconstitutionally suppress street performers' artistic expression.

*Id.* ¶ 11.

Through ¶¶ 18 to 157, the SAC sets out Plaintiff's statement of facts. While many of these factual paragraphs relate to a specific defendant or defendants, many paragraphs purport to relate to "defendants" or "government officials." *See*, *e.g.*, SAC ¶¶ 35, 44, 49-51, 62-64, 69-73, 109-10, 153-54, 157. The following paragraphs highlight this practice:

> 49. Defendants and other government officials, employees, and agents expel and forbid Daniel and other street performers from downtown San Antonio locations occupied by vendors and tourists after subjectively concluding the street performances might be for voluntary donations, or that voluntary donations are possible.

> 50. Defendants are using the DSPP as intended—to expel Daniel and other street performers from downtown San Antonio locations occupied by tourists and vendors.

> 51. Defendants prevent Daniel from ever reaching his intended audience (downtown locations with vendors and tourists), because they (and other officials, employees, and agents) subjectively conclude that his performances are the kind of performances the DSPP prohibits.

> 64. Despite what the City of San Antonio conveys, the DSPP does not provide any benefit to street performers. The DSPP is a tool used by Defendants and other government officials to expel Daniel and other street performers they find disruptive.

> 69. However, through policy, practice, and custom, government officials falsely charge street performers with actual crimes—such as violating noise nuisance ordinance, blocking or obstructing sidewalks or impeding traffic, or more recently, asserting that the street performer is criminally trespassing on private property.

> 70. Government officials know that by falsely charging street performers with actual crimes, criminal prosecution will initiate, and street performers will stop their

artistic expression at downtown locations occupied by tourists and vendors.

71. Defendants expelled Daniel from Market Square and Alamo Plaza by charging him with criminally trespassing on private property. Defendants did not actually think Daniel was criminally trespassing on private property. Rather, they unilaterally determined he violated the DSPP because they wanted to permanently exclude him from Market Square, Alamo Plaza, and any other area open to the public that is or intended to be occupied by tourists and vendors.

157. Defendants deprived and continue to deprive Plaintiff of any downtown location open to tourists and vendors where Plaintiff can dance for the purpose of artistic expression and not risk expulsion, detention, arrest, jail, or criminal charges.

Commencing with ¶ 158 and continuing through ¶ 278, the SAC sets out thirteen counts against the City and various City defendants. Through ¶ 158, "Plaintiff realleges the material facts alleged in the preceding paragraphs against" the defendants listed for Count I (violation of First Amendment) and collectively identified as "San Antonio Defendants." Plaintiff makes the same statement regarding realleging material facts for Counts II (retaliation in violation of First Amendment), III (unlawful detention under Fourth Amendment), IV (excessive force in violation of Fourth Amendment), VI (false imprisonment), IX (violation of due process), X (conspiracy), XII (declaratory relief), and XIII (injunctive relief). *See* SAC ¶¶ 184, 194, 200, 214, 254, 262, 277, 278. Through ¶ 207, "Plaintiff realleges the material facts in the preceding paragraphs against John Doe Officer Defendants" for Count V (excessive force in violation of Fourth Amendment). For his malicious prosecution claims (Counts VII and VIII), "Plaintiff incorporates herein all prior allegations." *Id*. ¶¶ 218, 232. He does the same for Count XI (municipal liability, unlawful policy, failure to train). *Id*. ¶ 266.

Commencing with ¶ 279 and continuing through ¶ 314, the SAC sets out seven counts against the Commissioner and various Alamo Rangers. Through ¶ 279, "Plaintiff realleges the material facts alleged in the preceding paragraphs against Defendant Bush, Defendant Owens, and Alamo Ranger Defendants ('Ranger Defendants')" for Count XIV (violation of First Amendment). For Counts XV (retaliation in violation of First Amendment), XVI (unlawful detention), XVII

4

(excessive force), XVIII (due process), XIX (conspiracy), XX (injunctive relief), Plaintiff makes the same statement regarding realleging material facts against the Ranger Defendants. *See* SAC ¶¶ 287, 295, 298, 304, 309, 313.

According to Plaintiff, "[a]s a direct and proximate result of the Defendants' conduct, Plaintiff suffered damages for violations of the First, Fourth, and Fourteenth Amendments." *Id*. ¶ 316. He seeks declaratory and injunctive relief as to the City, as well as injunctive relief barring the Commissioner taking certain actions and "Defendants" in general "from engaging in any retaliatory acts." *Id*. at 42-43. He also seeks nominal damages. *Id*. at 43.

The Commissioner seeks a number of things though his motion. He initially states that he moves (1) for dismissal of the SAC pursuant to Fed. R. Civ. P. 12(b)(6), and (2) "independently . . . for dismissal of all claims for damages" under Rule 12(b)(1), while also seeking, as an alternative, (3) a more definite statement" under Rule 12(e). *See* Mot. at 1. He later indicates that all claims are subject to dismissal through Rule 12(b)(1) on grounds of sovereign immunity. *See id*. at 2, 5-6, 11. In addition, he characterizes the SAC as a "shotgun pleading" and broadly suggests that dismissal is thus warranted under Rule 12(b)(6). *See id*. 1-2, 6-8.

In response, Plaintiff contends that he only seeks injunctive relief against the Commissioner and that alleged violations of his First and Fourth Amendment rights survive the Rule 12(b)(6) attack. With the Commissioner's reply, the motion is ready for ruling.

## II. PRELIMINARY MATTERS

The Commissioner devotes a significant amount of briefing to procedural deficiencies related to his characterization of the SAC as a shotgun pleading. Mot. at 6-11. Plaintiff denies that characterization. Resp. at 7-9. Given the Commissioner's emphasis on procedural aspects of Plaintiff's operative pleading, the Court addresses the Commissioner's concerns and highlights where both parties misstep. Furthermore, for purposes of Fed. R. Civ. P. 12(b)(6), the asserted pleading

deficiencies may impact application of the well-established standards for stating a claim set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). And, while the Court must first address the jurisdictional issues presented under Rule 12(b)(1), pleading deficiencies may likewise impact that consideration.

The Eleventh Circuit has taken an active role in criticizing "shotgun pleadings." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320-23 (11th Cir. 2015) (noting "a thirty-year salvo of criticism aimed at shotgun pleadings" and examining "more than sixty published decisions issued since" that opening salvo). While not as vocal in its criticism, the Fifth Circuit has likewise expressed concerns. *See S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788-89 (5th Cir. 1986) (discussing sanctions under Fed. R. Civ. P. 11; stating that, if "Rule 11 is to mean anything and we think it does, it must mean an end to such expeditionary pleadings"; and discouraging the use of a "'shotgun approach' to pleadings . . . where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick"), *abrogation on other grounds recognized by Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023-24 (5th Cir. 1994); *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting) (citing *Weiland* with approval; criticizing the use of "blanket terms covering all the defendants, by lumping them together or [referring to] them collectively"; and stating that such "allegations are properly disregarded unless the reference to [particular defendants] can be clearly inferred"). And district courts in Texas have also waded into the fray.[2]

---

[2] *See Vega v. City of EL Paso*, No. EP-21-CV-00116-DCG, 2022 WL 789334, at *10 (W.D. Tex. Mar. 15, 2022) (citing *Weiland* when granting leave to amend and, "to promote clarity," directing the plaintiff to "separately set out each of [his] claims . . . in the amended complaint to avoid the sins of 'shotgun pleadings'"); *Howley v. Bankers Standard Ins. Co.*, No. 3:19-CV-2477-L, 2021 WL 913290, at *9 (N.D. Tex. Mar. 10, 2021) (discussing *Weiland*); *Owens v. TransUnion, LLC*, No. 4:20-CV-665-SDJ-KPJ, 2021 WL 5088686, at *9 (E.D. Tex. Aug. 30, 2021) (recommendation of Mag. J.) (discussing *Weiland* and shotgun pleadings when granting leave to amend some claims), *adopted as modified*, 2021 WL 4451891 (E.D. Tex. Sept. 29, 2021); *Staten v. City of Dallas*, No. 3:19-CV-843-L-BN, 2020 WL 1902573, at *12 (N.D. Tex. Jan. 17, 2020) (recommendation of Mag. J.) (relying on *Hinojosa* dissent and *Weiland* to point out problems caused by using "blanket terms covering all the defendants") *accepted by* 2020 WL 548373 (N.D. Tex. Feb. 4, 2020); *Woolum v. City of Dallas, Tex.*, No. 3:18-CV-2453-B-BN, 2019 WL 2604125, at

As elucidated by the cited cases, courts "often disparagingly" refer to complaints that violate either Fed. R. Civ. P. 8(a)(2) or 10(b) or both as "shotgun pleadings." *See Weiland*, 792 F.3d at 1320. As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In general, furthermore, Rule 10 addresses the form of pleadings, and Rule 10(b) expressly addresses paragraphs and separate statements. Rule 10(b) states in full:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Restating a maxim that is as true today as when first stated in 1985, *Wieland* commences its overview of "shotgun pleadings" by recognizing that the purpose of Rules 8(b)(2) and 10(b)

> is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not. "Shotgun" pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden by the [spirit], if not the [letter], of these rules.

792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). The Eleventh Circuit then

> identifie[s] four rough types or categories of shotgun pleadings. The most common

---

*5 (N.D. Tex. May 24, 2019) (recommendation of Mag. J.) (relying on *Hinojosa* dissent and *Weiland* while addressing generalized pleading allegations) *accepted by* 2019 WL 2601822 (N.D. Tex. June 25, 2019); *Euramerica Gas & Oil Corp. v. Britlind Energy LLC*, No. 3:18-CV-0317-M, 2018 WL 11356913, at *1 (N.D. Tex. Apr. 20, 2018) (explaining that the plaintiff's complaint was "deficient for several reasons," including taking a "shotgun" approach by asserting "multiple claims against multiple defendants" without proper specification); *Martinez v. Nueces Cnty., Tex.*, No. 2:13-CV-178, 2013 WL 6190519, at *3 (S.D. Tex. Nov. 26, 2013) (discussing "shotgun pleadings").

type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Id*. at 1321-23. This important last sentence highlights that the focus is on whether the pleading provides inadequate notice in some respect.

The Commissioner contends that Plaintiff combines the first and fourth "tactics, leaving its allegations indecipherable as applied to [him.]." Mot. at 6. While he properly recognizes that shotgun pleadings are disfavored, he overstates a few cited legal principles. *See id*. at 6-11.

First, he argues that "[l]umping defendants together is insufficient to state a claim against any of them." *Id*. at 6-7 (quoting *Tap Pilam Coahuiltecan Nation v. Alamo Tr., Inc.*, No. 5:19-CV-01084-OLG, 2019 WL 10945421, at *5 (W.D. Tex. Dec. 23, 2019)). He reads too much into the isolated quotation from *Tap Pilam*. While lumping defendants together as was done in that case may have been insufficient to state a claim against any defendant, that does not mean that lumping defendants together is insufficient to state a claim in all circumstances. The nature of examining alleged pleading deficiencies requires a case-by-case review. What may be deficient in one case may suffice in another due to the particulars of the two cases.

A case from the Northern District of Texas provides a useful example. *See Woolum v. City of Dallas, Tex.*, No. 3:18-CV-2453-B-BN, 2019 WL 2604125, at *5 (N.D. Tex. May 24, 2019) (recommendation of Mag. J.) *accepted by* 2019 WL 2601822 (N.D. Tex. June 25, 2019). In that

case, the plaintiff sued multiple police officers, and the Court found that "for present purposes, the Court may plausibly infer that Plaintiff presently alleges, before the benefit of discovery, that all Dallas police officers involved in his September 16, 2017 arrest are liable for the harms set out in the complaint." *Id*. It found such position "reasonable for purposes of this motion to dismiss." *Id*. This Court likewise finds such position reasonable in such circumstances. Accepting the Commissioner's argument as an absolute precludes appropriate consideration of specifics of a given case.

Another apt example for not accepting the argument in absolute terms arises in the context of a two-defendant case. Oftentimes, it is perfectly acceptable in such cases to plead that "Defendants" did a particular act or neglected to perform some other act. Ultimately, it boils down to whether the pleading provides fair notice of what the claims are and the grounds supporting them. Lumping defendants together in some instances may result in such unclarity that the requisite fair notice is lacking. But in other instances, the pleading provides fair notice even when lumping defendants together.

The Commissioner next argues that "allegations of a shotgun pleading must be disregarded when it uses blanket terms to address defendants collectively." Mot. at 7 (citing *Davis v. City of Alvarado*, No. 19-CV-463-K-BK, 2019 WL 6896878, at *4 n.2 (N.D. Tex. Dec. 3, 2019) (recommendation of Mag. J.) (in turn citing *Hinojosa*, 807 F.3d at 684 (Jones, J., dissenting)) *accepted by* 2019 WL 6894686 (N.D. Tex. Dec. 18, 2019), *aff'd*, 835 F. App'x 714 (5th Cir. 2020); *Callier v. Nat'l United Group, LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021)). The preceding discussion explains why it is inappropriate to take an absolute, mandatory approach in all cases.

The Commissioner, furthermore, takes the precedent out of context. The dissenting opinion in *Hinojosa* provides a basis for disregarding blanket allegations addressing defendants collectively, but it did not suggest any mandatory disregard for such allegations. It instead stated that

courts properly disregard such allegations, "unless the reference" to specific defendants "can be clearly inferred." *Hinojosa*, 807 F.3d at 684 (Jones, J., dissenting)). Not only does the dissent provide that definite exception, but it also indicates that the allegations should be disregarded in that case because there "is not a plausible inference" that one of the defendants was personally involved in the claims. *See id*. Thus, the *Hinojosa* dissent recognizes that the courts must examine the matter on a case-by-case basis.

To state the disregard of allegations in mandatory terms overstates the Fifth Circuit dissent relied upon in *Davis*. And *Davis* merely suggests mandatory disregard in a parenthetical to its *Hinojosa* citation. *See* 2019 WL 6896878, at *4 n.2. Despite that parenthetical reference, *Davis* does no more than make a passing footnote reference that "many of the allegations in Plaintiff's operative complaint are nothing more than 'shotgun' pleadings and should be disregarded." *See id*. *Callier* likewise recognizes that "an inference of plausible liability" factors into consideration of general allegations. *See* 2021 WL 5393829, at *4.

The Commissioner next argues that the Court should disregard claims which broadly incorporate every preceding paragraph. Mot. at 7-8. He argues that this tactic aggravates Plaintiff's collective, general references to defendants and government officials. *Id*. And he argues that this tactic warrants dismissal of the claims against him. *Id*. at 8 (citing *Lee v. Liberty Ins. Corp.*, No. 3:19-CV-321-L, 2021 WL 4502323, at *7 n.2 (N.D. Tex. Sept. 30, 2021)). Although *Lee* undoubtedly criticizes shotgun pleadings, nothing within the footnote itself suggests that the tactic warrants dismissal of itself.

Plaintiff contends that his "live complaint is not a 'shotgun' pleading, as alleged by Defendant Bush, but is rather a clear and specific rendition of Defendant Bush, and his agents, wrongful acts." Resp. at 7. He asserts that he has not improperly referred generally to "Defendants" or "Government Officials" because he merely alerts defendants that he pursues identical claims

against each defendant. *Id*. at 8.

Despite Plaintiff's protestations to the contrary, his SAC contains elements of a "shotgun pleading." While, at times, the SAC carefully identifies the specific defendants charged with certain acts, it does fall into the trap of identifying defendants too generally at other times. Furthermore, as shown by the previous recitation of various paragraphs of the SAC, Plaintiff also utilizes the practice of incorporating all prior allegations into its asserted claims. These methods of pleading can create ambiguity, and if significant enough, they may warrant disregarding certain allegations and ultimately finding that the complaint (or certain claims therein) fails to satisfy Fed. R. Civ. P. 8(a)(2) and is (are) thus subject to dismissal.

This Court certainly sees the problems presented by "shotgun pleadings." And the Commissioner has sound concerns in this case. The Court's issues with the Commissioner's position relate to the suggested mandatory disregard for allegations and the apparent suggestion that dismissal is warranted on the basis of the procedural issues alone without consideration of the particulars of this case.

As stated in *Weiland*: "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" 792 F.3d at 1325 (adding emphasis and quoting *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). When faced with such an impossible task, a defendant "is not expected to frame a responsive pleading," but "is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Anderson*, 77 F.3d at 366. When "the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." *Id*. (footnote omitted).

Here, the Commissioner seeks a more definite statement, only in the alternative, and while he may suggest dismissal is proper on procedural grounds alone, he specifically moves for dismissal under Fed. R. Civ. P. 12(b)(1) and (6), not as a sanction for noncompliance with the pleading rules. In these circumstances, the initial focus should be determining whether dismissal is appropriate under Rule 12(b)(1), and if not, whether the factual allegations are insufficient to withstand the Rule 12(b)(6) motion to dismiss. Both types of motions entail consideration of the operative pleading, the factual allegations and claims asserted therein, and the relief requested. With the foregoing in mind, the Court thus proceeds to consider the presented motion under Fed. R. Civ. P. 12(b)(1), and if necessary, Rule 12(b)(6). After such consideration, the Court will consider the alternate request for a more definite statement under Rule 12(e), and whether Plaintiff should be given leave to amend.

### III. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)

Asserting sovereign immunity through the Eleventh Amendment and moving pursuant to Fed. R. Civ. P. 12(b)(1), the Commissioner initially seeks dismissal of claims for damages. But ultimately, he seeks dismissal of all claims through Rule 12(b)(1). Whether the Eleventh Amendment bars a claim due to sovereign immunity raises a jurisdictional challenge. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Such a challenge is appropriately brought under Rule 12(b)(1). *Alvarado v. Tex. Health & Hum. Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2019 WL 6876499, at *2 (W.D. Tex. Dec. 17, 2019).

**A. General Jurisdictional Principles**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the

12

party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). By first considering a Rule 12(b)(1) motion, courts avoid "prematurely dismissing a case with prejudice" when it lacks jurisdiction. *Ramming*, 281 F.3d at 161. A "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

Courts have "the power to dismiss for lack of subject matter jurisdiction based on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *accord Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). When determining issues of subject matter jurisdiction, the courts "may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment." *State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973).

**B. Facial versus Factual Attack**

The Fifth Circuit has long distinguished between "facial" and "factual" jurisdictional attacks. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Id.* When faced with a factual jurisdictional attack, "a plaintiff 'must prove the existence

of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes omitted), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).

For factual attacks, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413 (quoting *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3rd Cir. 1977)). On the other hand, a facial attack requires the courts to "consider the allegations of the complaint as true." *Id.* "Regardless of the nature of the attack, the plaintiff seeking a federal forum 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Chandler v. United States*, 338 F. Supp. 3d 592, 599 (N.D. Tex. 2018) (quoting *Ramming*, 281 F.3d at 161).

Here, the Commissioner merely makes a facial jurisdictional attack. He does not present evidence with his motion to dismiss. Accordingly, the Court presumes the truthfulness of Plaintiff's allegations and determines whether jurisdiction exists by examining the complaint alone. This case presents no need to resolve disputed facts on the instant motion.

## C. Sovereign Immunity

The circumstances of this case present the issue of sovereign immunity. Stated succinctly, based upon sovereign immunity under the Eleventh Amendment, federal courts lack "jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) (quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 962 (5th Cir. 2014)); *accord City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Plaintiff does not allege that Texas has waived its immunity or that Congress has

abrogated its Eleventh Amendment sovereign immunity. As a general principle, moreover, a §
1983 action presents no state waiver or Congressional abrogation of sovereign immunity. *See Al-varado v. Tex. Health & Hum. Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2019 WL 6876499, at *2
(W.D. Tex. Dec. 17, 2019) (citing cases).

### 1. Damages

The Second Amended Complaint indicates that "Plaintiff has suffered damages for viola-tions of the First, Fourth, and Fourteenth Amendments." SAC ¶ 316. Although the prayer for relief
asserts no specific claim for damages, it does specifically seek nominal damages from unspecified
"one or more Defendants." *See id*. at 42-43. However, "a suit for nominal damages against a state
[or state officials acting in their official capacity] is not cognizable under § 1983 and can be barred
under the Eleventh Amendment." *Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735,
746 (W.D. Tex. 2007) (citing *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 (1997));
*accord Luke v. Texas*, No. 1:20-CV-388-LY, 2021 WL 2949479, at *1 (W.D. Tex. Apr. 30, 2021)
("state sovereign immunity bars suits against states for money damages, including nominal dam-ages, which are paid from state funds"), *appeal filed*, No. 21-50791 (5th Cir. Aug. 26, 2021).

While Plaintiff contends in response to the motion that he seeks only injunctive relief
against the Commissioner, his operative pleading belies the contention. To the extent Plaintiff
seeks nominal or other monetary damages from the Commissioner, such damage claims are barred
by sovereign immunity. Accordingly, the Court grants the Rule 12(b)(1) motion to that extent.

### 2. Injunctive Relief

Naturally, a "suit is not 'against' a state" for purposes of sovereign immunity "when it
seeks prospective, injunctive relief from a state actor, in her [or his] official capacity, based on an
alleged ongoing violation of the federal constitution.". *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th
Cir. 2013). Under this "exception to Eleventh Amendment immunity," private parties may bring

suit "for injunctive or declaratory relief against individual state officials acting in violation of federal law." *City of Austin*, 943 F.3d at 997 (relying on *Ex parte Young*, 209 U.S. 123 (1908) and attributing second quotation to *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013)). This exception only applies when the state official, "by virtue of his office," has "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *See id.* (quoting *Young*, 209 U.S. at 157).

The Commissioner recognizes that, in general, plaintiffs may seek prospective injunctive relief notwithstanding the immunity bar on claims for damages. Mot. at 5. But he still argues that dismissal is proper under Rule 12(b)(1) because the factual deficiencies of the complaint relate to whether he has a sufficient connection to the enforcement of the alleged unconstitutional policy to be an appropriate defendant under the *Young* exception. *See id* at 11. To be clear, although the Commissioner asserts that Plaintiff's SAC is factually deficient to connect him to the enforcement of any unconstitutional policy, his attack on the SAC is only a facial challenge – at no point does he present evidence that he is unconnected to an unconstitutional policy. He relies on alleged pleading deficiencies, both factual and procedural, to support the argument.

As previously mentioned, *City of Austin* supports the asserted legal argument. More recently, the Fifth Circuit has reiterated that, in a suit proceeding under the *Young* exception, "the proper defendant is a state official acting in violation of federal law who has a sufficient connection to enforcing an allegedly unconstitutional law." *See Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (citation and internal quotation marks omitted). And when conducting the *Young* analysis, the courts "first consider whether the plaintiff has named the proper defendant or defendants." *City of Austin*, 943 F.3d at 998.

This initial analysis entails considering whether the named official "is statutorily tasked with enforcing the challenged law," or in this instance, the challenged policy or policies. *See id.* If some other "state actor or agency" is responsible for enforcing the law (or in this case policy), then the "*Young* analysis ends," and the courts properly dismiss the claims against the wrong defendant. *Id.* When the challenged statute (or policy in this instance) names "no official or agency" as the one authorized to enforce it, the courts "consider whether the state official actually has the authority to enforce the challenged law" or policy. *Id.*

"Once it is clear that the named defendant is proper," courts utilize a two-step approach "to determine whether the *Young* exception applies to the relevant state official." *Id.* The first step involves the "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). The second step involves deciding "whether the official in question has a 'sufficient connection to the enforcement' of the challenged act." *Id.* (quoting *Young*, 209 U.S. at 157 and citing *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017)).

No one suggests that any challenged policy in this case names a particular official or agency to enforce it. By Plaintiff's own allegations, the City of San Antonio "is responsible for the DSPP, its enforcement, and application." SAC ¶ 10. Plaintiff further alleges that, "upon information and belief," the Commissioner "controls Alamo Rangers and portions of the Alamo Plaza." *Id.* ¶ 11. Plaintiff also alleges that the Commissioner "has a separate policy, practice, or custom to unconstitutionally suppress street performers' artistic expression" and that he "works in coordination with Defendant City to enforce the DSPP and other policy, practice, or custom to unconstitutionally suppress street performers' artistic expression." *Id.*

Under these allegations, the Commissioner appears to be a proper defendant as to the

challenged policies, at least to the extent violations have occurred in Alamo Plaza resulting in actions against Plaintiff by Alamo Rangers. And the SAC undoubtedly alleges an ongoing violation of federal law while also seeking prospective injunctive relief. Thus, the critical question is whether the Commissioner has a sufficient connection to the enforcement of the challenged policies.

To the extent the Commissioner has his own policy as alleged, he undoubtedly has a sufficient connection to it. But to determine whether the Commissioner has his own policy and whether he has a sufficient connection to the DSPP requires a deeper dive into the factual allegations of the SAC.

As the Commissioner accurately describes it, the allegations against him in the SAC are "vague and sparse." Mot. at 4. The Court has previously set out numerous paragraphs of the SAC, including ¶ 2 (introductory paragraph contending that the City and the Commissioner work in coordination to ban street performers) and ¶ 11 (identifying the Commissioner and asserting that he "controls Alamo Rangers and portions of the Alamo Plaza," has an unspecified policy of his own to suppress artistic expression, and works in coordination with the City).

In its section addressing the Alamo Plaza, the SAC sets out numerous paragraphs. *See* SAC ¶¶ 100-35. Of those paragraphs, the following mention the Commissioner:

> 103. The DSPP suggests that Alamo Plaza is owned and controlled by the City of San Antonio (otherwise the DSPP would not apply to the Alamo Plaza). However, Defendant City and its employees suggest that Defendant Bush and Alamo Rangers can exclude Daniel from the Alamo Plaza because they might own or control it.

> 111. In May 2021, Daniel approached Defendant Owens, an Alamo Ranger believed to be under the control of Defendant Bush and/or Defendant City. He asked Defendant Owens about locations within Alamo Plaza where he could dance.

> 131. Daniel was approached by a lieutenant and sergeant with the Defendant City Park Police. They informed Daniel that they received a complaint from Defendant Bush, Defendant Owens, and other Alamo Ranger Defendants about his presence.

134. Defendant City's Park Police represented to Daniel that Defendant Bush, Defendant Owens, and Alamo Ranger Defendants complained about Daniel's presence. Daniel expressed that he wanted to dance in protest, but Defendant City and John Doe Officers told him that he was not welcome to do so because Defendant Bush, Defendant Owens, and Alamo Ranger Defendants assumed he was soliciting or panhandling in violation of policy.

135. Defendant City's Park Police told Daniel he was being provided notice of criminal trespass on private property by Defendant Bush, Defendant Owens, and Alamo Ranger Defendants, and was handed a card with Case # SAPD 21116311.

Reviewing the factual allegations and the SAC as a whole, the Court finds that Plaintiff has alleged no facts to support finding any policy at issue in this case other than the DSPP. Although the Court recognizes that there may be some suitable leniency in pleading a policy against a municipality, *see, e.g., Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017) (agreeing with common-sense approached endorsed in *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011)); *E.G. ex rel. Gonzalez v. Bond*, No. 1:16-CV-0068-BL, 2016 WL 8672774, at *5 (N.D. Tex. Sept. 9, 2016) (recommendation of Mag. J.) (same) *adopted as modified on other grounds sub nom. E.G. v. Bond*, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017), that common-sense approach does not aid Plaintiff at this point.

The Court first notes the obvious – the Commissioner is not a municipality. Nevertheless, because Plaintiff seeks injunctive relief against the Commissioner based upon two policies, the DSPP and an unidentified policy of the Commissioner, the Court sees similarities between Plaintiff's claims against the Commissioner and his municipality claims against the City. The Court thus considers principles relevant to municipality claims. But in doing so, it makes no ultimate conclusion that the principles apply to the claims asserted against the Commissioner.

Although Plaintiff's claims against the Commissioner concern an as-of-yet unidentified policy, they also concern a specifically identified policy, the DSPP. Since the inception of this case, Plaintiff has alleged the DSPP as the relevant policy. After additional events and an opportunity for discovery, Plaintiff added claims against GLO based, at least in part, on an unspecified

19

policy other than the DSPP. When faced with a motion to dismiss the claims against GLO, Plaintiff voluntarily dismissed them, but later added claims against the Commissioner in the SAC filed in October 2021, ten months after the case commenced. Through discovery, Plaintiff should have information to enable him to provide specifics about the unidentified policy asserted in the SAC.

The common-sense approach espoused in *Thomas* and other cases provides a "balance, requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *See* 800 F. Supp. 2d at 844. But this balance differs in a case in which the plaintiff commences the case based upon a specifically identified policy and then later, after an opportunity for discovery, adds other parties based in part on that identified policy and some other unspecified policy. The discovery process should provide necessary details as to a newly alleged policy before the party adds allegations based upon the new policy.

As is widely accepted, plaintiffs, in general, cannot rely on speculation, conjecture, or conclusory statements to support their claims. Although there may be some relaxation regarding factual allegations needed to assert a claim of municipal liability at the outset of a case, the factors favoring such relaxation dwindle as the case progresses. As a case proceeds with discovery, an amended pleading asserting new claims against new parties based at least in part on a newly alleged policy should not benefit from any relaxation of the usual pleading requirements. The circumstances here do not warrant permitting Plaintiff to assert a policy separate from the DSPP without supporting facts.

And Plaintiff provides insufficient facts to support any policy other than the DSPP. Further, although he identifies encounters with Alamo Rangers, he has not made factual allegations sufficient to show "a persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents . . . policy" of the Commissioner. *Piotrowski v. City of*

*Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citation omitted). The requirement for plaintiffs to identify a policy or custom that caused their injuries "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

With respect to the DSPP, Plaintiff makes insufficient factual allegations to connect the Commissioner to such policy. As Plaintiff points out in the SAC, the DSPP indicates that the City controls relevant downtown pedestrian spaces, including Alamo Plaza, which Plaintiff attempts to make subject to some other policy. *See* SAC ¶ 103. While Plaintiff makes conclusory statements that Commissioner works in coordination with the City, the SAC lacks facts to support the conclusion.

Nothing within the DSPP connects the Commissioner to it, other than perhaps the reference that it applies to Alamo Plaza. That reference is insufficient, of itself, to connect the Commissioner, by virtue of his office, to the enforcement of that challenged policy. The allegation that "Defendant City and its employees suggest that Defendant Bush and Alamo Rangers can exclude [Plaintiff] from the Alamo Plaza because they might own or control it," *see* SAC ¶ 103, is too speculative to connect the Commissioner to enforcement of the DSPP. That "Defendant Bush" and Alamo Rangers may have complained about Plaintiff's presence to the City Park Police, *see id*. ¶¶ 131 and 134, does not support such a connection. In fact, such allegations conflict with an allegation that the Commissioner has authority to enforce the DSPP.

Without sufficient factual allegations connecting the Commissioner to the enforcement of the DSPP, by virtue of his office, the *Young* exception is simply inapplicable and thus does not permit injunctive relief, even prospective in nature, to be pursued against the Commissioner. Accordingly, Plaintiff may not pursue his claim for injunctive relief against the Commissioner.

**D. Jurisdictional Conclusion**

For the reasons stated, sovereign immunity bars the claims asserted against the Commissioner and the *Young* exception is inapplicable on the facts pled. Accordingly, the Court grants the motion to dismiss under Rule 12(b)(1) and finds that it lacks jurisdiction over all claims against the Commissioner. There is thus no need to address the instant motion under Fed. R. Civ. P. 12(b)(6). Because the Court finds dismissal appropriate for jurisdictional reasons under Rule 12(b)(1), the dismissal "must be a dismissal without prejudice." *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016). Accordingly, the Court denies the motion to the extent the Commissioner seeks dismissal with prejudice.

## IV. OTHER MATTERS

In the conclusion to his response, Plaintiff requests that the Court afford an opportunity to amend his SAC to address alleged defects, if the Court finds his pleading deficient. Resp. at 10. But Plaintiff does not identify any factual allegations that he would add that would save his claims against the Commissioner from dismissal. Whether to grant leave to amend is ultimately within the Court's sound discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 333 (5th Cir. 2012). But leave to amend is not required when parties have pled their best case. *O'Malley v. Brown Bros. Harriman & Co.*, No. SA-19-CV-0010-JKP, 2020 WL 1033658, at *9 (W.D. Tex. Mar. 3, 2020) (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009)). Plaintiff has twice amended his complaint. After pursuing discovery, he filed his last amendment ten months after commencing this action. It appears that Plaintiff has pled his best case against the Commissioner. The Court thus denies the request to amend within the response to the motion.

Because the Court has denied Plaintiff's request to replead, it has no reason to reach the Commissioner's alternate request for a more definite statement. The Commissioner expressly

seeks a more definite statement only if the Court allows Plaintiff to replead.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the *Motion to Dismiss Plaintiff's Second Amended Complaint and Motion for a More Definite Statement in the Alternative* (ECF No. 45) filed by Defendant George P. Bush, Commissioner of the General Land Office of the State of Texas. It denies the motion to the extent the Commissioner seeks dismissal with prejudice. It otherwise grants the motion and dismisses all claims asserted against the Commissioner without prejudice for lack of jurisdiction. It also denies the request to amend contained within the response to the motion and thus has no reason to consider the alternative motion for a more definite statement.

**SIGNED this 20th day of May 2022.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**