UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOSE DANIEL VALADEZ III,

    *Plaintiff*,

v.                                        **Case No. SA-21-CV-0002-JKP**

CITY OF SAN ANTONIO,[1]

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court are the following cross-motions for summary judgment: (1) a Motion for Summary Judgment (ECF No. 68) filed by the City of San Antonio ("the City") and (2) a Motion for Summary Judgment (ECF No. 72) filed by Plaintiff. With relevant briefing by Plaintiff (ECF Nos. 75 (response) and 77 (reply)) and the City (ECF Nos. 74 (response) and 76 (reply)), the motions are ready for ruling. After considering the motions, related briefing, relevant pleadings, submitted evidence,[2] and applicable law, the Court grants the City's motion and denies Plaintiff's motion.

## I. BACKGROUND[3]

The Court has previously addressed matters arising out of Plaintiff's original and second amended complaints. At this time, the operative pleading is the Third Amended Complaint ("TAC") (ECF No. 63) filed by Plaintiff. "This is a civil rights action for permanent injunctive

---

[1] Based on the Third Amended Complaint (ECF No. 63), the City of San Antonio is the only remaining defendant in this case.

[2] Both sides have submitted exhibits with their motions. The City provides eight exhibits with its motion, *see* ECF No. 68-1 (Exs. 1 to 6), 68-2 (Ex. 7), and 68-3 (Ex. 8) and a ninth exhibit with its response, *see* ECF No. 74-1 (Ex. 9). The Court will cite to these by exhibit number. Plaintiff provides sixteen exhibits in an appendix supporting his motion, *see* ECF No. 67, which the Court will cite to by page number to the extent feasible, and a single exhibit with his response, *see* ECF No. 75-1.

[3] The factual background is uncontested unless otherwise noted. The Court considers disputed facts in the light most favorable to the non-movant as required through the summary judgment process.

relief pursuant to 42 U.S.C. § 1983." TAC ¶ 6. Plaintiff seeks "to enjoin the City of San Antonio from enforcing its Downtown Street Performer Policy ("the DSPP")." *Id*. ¶ 1. Additionally, Plaintiff seeks a declaration that the City violated the United States Constitution by its "application and enforcement of the DSPP to permanently ban individuals engaged in First Amendment activity from locations within the downtown business district that is open [to] tourists and vendors, including but not limited to Market Square and Alamo Plaza." *Id*. at 39. Through his operative pleading, Plaintiff challenges the location component of the DSPP. *See id*. ¶¶ 5, 15–17, 47, 50, 55–56, 67, 189, 192–93, and 195. His claimed First Amendment violations pertain to Historic Market Square, Alamo Plaza, and Travis Park. *See id*. ¶ 5.

When Plaintiff moved for leave to file that amended pleading, he explained that the parties had resolved claims against some defendants, "resolved all monetary claims," and "[t]he only outstanding issue concerns whether the City of San Antonio's Downtown Street Performer Policy infringes upon Plaintiff's First Amendment rights." *See* ECF No. 61. The TAC drops all defendants from this action other than the City of San Antonio.

Each side has moved for summary judgment. *See* ECF Nos. 68 and 72. The briefing on the motions is complete. Plaintiff provides the DSPP with his supporting appendix. *See* App'x 11–13. While the motions do not present the issues particularly well in some respects, the primary issue is whether the City, through the DSPP, has violated the First Amendment. Notably, Plaintiff's pleading does not place the City's vending ordinance (City Code § 16-236) at issue in this case. While the City notes this omission, it nevertheless addresses its constitutionality in its motion for summary judgment. *See* ECF No. 68 at 17–20. By not addressing the vending ordinance in response, *see*, *generally*, ECF No. 75, Plaintiff concedes that it is not at issue in this case. But given its relevance to the DSPP, the Court will provide a brief overview of the vending ordinance and its relationship to the DSPP. Further, even though the parties' focus is on the alleged First

Amendment violation, principles of municipal liability naturally apply to claims asserted against the City. Plaintiff specifically addresses such liability in response to the City's motion. *See id.* at 14–15.

Additionally, in response to a status report order, the parties informed the Court that a live controversy remains in this case, but it is limited "to whether the way the City applies the [DSPP] satisfies the First Amendment." *See* ECF No. 79 at 1. They further explain that they have resolved "all monetary damage issues," but "disagree on a legal issue," which could not be resolved even through a formal ADR process. *Id.* at 2. They have "narrow[ed] the issue to whether a declaration should be issued that the DSPP violates the First Amendment, as applied to Plaintiff." *Id.* With that narrow issue before it, the Court proceeds.

## II. THE DSPP

Through its City Center Development Office ("CCDO"), the City published the DSPP as a guide for individuals desiring to perform on public property in the Central Business District ("CBD") of San Antonio. After a brief introduction (¶ 1), the DSPP sets out its purpose (¶ 2), defines relevant terms (¶ 3), designates permitted areas (¶ 4), eliminates any registration requirement (¶ 5), and identifies various restrictions (¶ 6). *See* DSPP (App'x at 11–13). Its introduction recognizes that "Street Performing, also known as busking, provides a public amenity that enhances the vibrancy, vitality and ambience of Downtown San Antonio" and the City "encourages the performance of non-commercial artistic expression at downtown sidewalks, plazas and parks." *Id.* ¶ 1.1. The stated purpose is to "establish[] guidelines of what is allowed with busking in Downtown San Antonio" and to make the guidelines inapplicable "for any other program authorized by the City of San Antonio." *Id.* ¶¶ 2.1 and 2.2.

For purposes of the DSPP, "'City' means the City of San Antonio" and "'Downtown' means the Central Business District." *See id.* ¶¶ 3.1 and 3.2. It provides the following definition:

3

"'Street performance' or 'busking' is the practice of performing in designated areas, for voluntary donations. Busking includes musical performances and other types of personal entertainment." *Id*. ¶ 3.3. It defines "Street Performer" as "the person presenting an artistic expression in the form of mu-sic, dance, acrobatic, comedy, singing, musical performance or other expressive activities." *Id*. ¶ 3.4.

In general, the DSPP permits busking in downtown public areas controlled by the City except for the River Walk, Alamo Plaza, Main Plaza, and outdoor places owned and controlled by the City for other purposes, including Market Square. *Id*. ¶ 4.1. It designates "Travis Park" and "specified areas of Houston Street and certain cross streets along Houston Street" as "[p]referred locations." *Id*. ¶ 4.2. Despite these permitted and preferred locations, the DSPP contains three specific limitations: (1) a "Street Performer may not block any sidewalk and may not hinder the free passage of pedestrians"; (2) "No more than one Street Performer, or coordinated group of street performers may perform in any specific location at the same time"; and (3) performances at a specific location is limited to one hour. *Id*. ¶¶ 4.3, 4.4, and 4.5. The DSPP lacks any enforcement provision as to these limitations. Indeed, Plaintiff agrees that "[t]he DSPP provides no enforcement procedure" and "[t]here are no fines, penalties, or other punishment for apparent violations." *See* ECF No. 72 at 5.

The City does not require performers to register. *See id*. ¶ 5.1. But it does set out restrictions on tips and donations (¶ 6.1), public solicitation (¶ 6.2), aggressive panhandling (¶ 6.3), selling merchandise (¶ 6.4), noise (¶ 6.5), connecting to City power sources (¶ 6.6), performance hours (¶ 6.7), and performing during private or community events (¶ 6.8). Paragraph 6.5 expressly requires Street Performers to "fully comply with noise regulations." Stated in full, ¶ 6.1 provides:

> Street Performer may solicit tips and donations from the public solely by means of a small sign no larger than 24 inches x 38 inches with a receptacle (such as a musical instrument case or small box); at no time shall the Street Performer make an oral solicitation while street performing or violate any of the City's regulations

regarding public solicitation.

The only stated enforcement mechanism for violating any restriction is through "the City's regulations regarding public solicitation" (¶¶ 6.1 and 6.2), and noise (¶ 6.5).

### III. CITY CODES AND RELATIONSHIP TO DSPP

Although the City's vending ordinance (City Code § 16-236(b)(2)) is not challenged in this case, the ordinance provides relevant background for the challenged DSPP. The Court previously explained the significance of the ordinance when denying Plaintiff a preliminary injunction. *See Valadez v. City of San Antonio*, No. SA-21-CV-0002-JKP, 2021 WL 411148, at *4–6 (W.D. Tex. Feb. 5, 2021). Even though Plaintiff does not challenge the vending ordinance, he has provided an appendix of city code provisions, including § 16-236. *See* App'x at 16–27.

In general, § 16-236 addresses "[a]reas prohibited to peddlers and canvassers." *See id.* at 16. Subsection (b) concerns the downtown business district and (b)(1) defines "Vend" as meaning, among other things, "accepting compensation in exchange for goods, merchandise, or services." *See id.* Furthermore, § 16-236(b)(2) makes it unlawful to "peddle, canvass, or solicit . . . any property or services or to hawk, sell, or vend goods, merchandise, or services in the downtown business district on public property." *Id.* And § 16-236(b)(3) sets out various exceptions to the vending prohibition, including (c) as allowed by permit issued by the City. *Id.*

Another City Code, § 16-226, defines "Canvasser" as "includ[ing] 'solicitor' and any person who makes retail sales for future delivery of tangible property from house to house or in any public place . . . ." *See* ECF No. 12-1. City Code § 21-29, which governs aggressive solicitation, provides the following definition:

> *Solicit* means to request, by the spoken, written, or printed word, or by other means of communication an immediate donation or transfer of money or another thing of value from another person, regardless of the solicitor's purpose or intended use of the money or other thing of value, and regardless of whether consideration is offered.

*See* ECF No. 12-3. In pertinent part, this definition is consistent with the generic, dictionary meaning "[t]o try to obtain by . . . persuasion." *United States v. Mejia-Aguilar*, 575 F. App'x 233, 238 (5th Cir. 2014) (per curiam) (citing Webster's II New College Dictionary 1075 (3d ed. 2005)). Similarly, "solicitation" is defined in relevant part as an "act or an instance of requesting or seeking to obtain something." *See id.* (quoting Black's Law Dictionary 1520 (9th ed. 2009)).

Asking for money, even as a voluntary donation, is solicitation both as defined by City Code 21-29 and in the general meaning of the term. This falls within conduct made unlawful by § 16-236(b)(2) – "solicit . . . any property." In addition, § 16-236(b)(2) expressly makes it unlawful for any person to "vend . . . services" and the § 16-236(b)(1) definition of "Vend" includes "accepting compensation in exchange for . . . services."

Although this case directly relates to the DSPP, § 16-236(b)(2) provides context and shows that the DSPP expands Plaintiff's expressive rights under the City's codes. By its terms, § 16-236(b)(2) would prohibit Plaintiff from soliciting and accepting donations for his performances absent a permit. The Fifth Circuit has upheld a prior version of this ordinance against a First Amendment challenge that it unconstitutionally restricted commercial speech, *see John v. City of San Antonio*, 336 F. App'x 411, 413 (5th Cir. 2009) (per curiam).

Absent an exception from the general vendor ordinance for street performers through the DSPP, Plaintiff may be categorized as a vendor based upon acceptance of donations. Through the DSPP, the City relaxes restrictions for downtown street performers while balancing competing interests. With this historical background and the balance of interests in mind, the Court proceeds to the merits of each summary judgment motion.

## IV. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This includes identifying those portions of the record that the party contends demonstrate the absence of a genuine dispute of material fact. *Id.* When seeking summary judgment on an affirmative defense, the movant "must establish beyond peradventure" each essential element of the defense. *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

But when "the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (quoting *In re: La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)). The movant need not "negate the elements of the nonmovant's case." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis

omitted) (parenthetically quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (en banc)). In these instances, however, the movant must "point[] out that there is no evidence to support a *specific element* of the nonmovant's claim"; rather than making "a conclusory assertion that the nonmovant has no evidence to support his *case*." *Id*. at 335 n.10.

"When parties file cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the non-moving party." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745 (5th Cir. 2019) (quoting *Cooley v. Hous. Auth. of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014)). Once the movant has carried its summary judgment burden, the burden shifts to the non-movant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Additionally, courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

## V. CITY'S MOTION FOR SUMMARY JUDGMENT

The City asserts that it is entitled to summary judgment "because the uncontested facts and evidence, or the absence of evidence on elements of Plaintiff's claims, establish [its] right to judgment as a matter of law." ECF No. 68 at 1. While it makes numerous arguments for this assertion, it first argues entitlement to summary judgment because the DSPP simply does not prohibit busking or require a permit. *Id*. at 5, 9–10. Although not framed in terms of municipal liability, the essence of this argument is that the DSPP is not the moving force behind any First Amendment violation. In response, Plaintiff raises a pretext argument to convince the Court to consider the

DSPP to be an enforceable City policy. *See* ECF No. 75 at 1–2. Similarly, when addressing municipal liability, he contends that the DSPP is "enforced using pretextual charges against targeted buskers and certain street performers who might entice voluntary donations." *Id*. at 15. And if the Court finds the DSPP to be an enforceable policy, he argues that it violates the First Amendment because it is selectively enforced based on content and cannot satisfy strict or intermediate scrutiny. *Id*. at 2.

Despite ample allegations and contentions within his operative pleading regarding perceived First Amendment violations resulting from the DSPP, Plaintiff provides limited evidence to support his allegations. *See* App'x (ECF No. 67). As already discussed, he provides the DSPP (Ex. 2) and city ordinances (Ex. 3). *See* App'x 11–13 (Ex. 2), 16–27 (Ex. 3). These documents speak for themselves. He also provides his own affidavit, *see* App'x 5–9, and four videos submitted on a flashdrive: Exhibit 6 (Travis Park Video, hereinafter "TP Video"); Exhibit 7 (Video Dep. John Jacks, hereinafter "Dep. Jack"); Exhibit 9 (Video in front of the Alamo); and Exhibit 16 (Video Regarding Vendor's Permit). The Court will address this evidence as needed.

Before considering whether there has been a First Amendment violation, the Court addresses the contested element of municipal liability—was the DSPP the moving force behind any First Amendment violation.

**A. Municipal Liability – Moving Force**

At this point, Plaintiff's remaining claim arises under 42 U.S.C. § 1983 against a municipality. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless" the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*,

675 F.3d 849, 867 (5th Cir. 2012) (en banc).

When a plaintiff seeks to impose liability on a municipality, other considerations come into play. The Fifth Circuit has held that "to hold a municipality liable for a constitutional violation under § 1983, a plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)). Only the third element is at issue through the City's motion.

The City argues that there is no evidence that (1) "Plaintiff was ever cited for busking, violating the DSPP, or even for vending in violation of a city ordinance in relation to any of his street performances" or (2) he "was cited or prevented from performing because of the DSPP." ECF No. 68 at 5. Relatedly, it argues that Plaintiff's First Amendment claim necessarily fails because the DSPP does not prevent him from busking at any location. *Id.* at 9–10. It contends that the policy does not prevent busking at all, and that Plaintiff lacks evidence that anyone cited him for violating it or that he was denied a permit under it. *Id.* Instead, the evidence shows that the DSPP has no enforcement mechanism and does not require buskers to obtain a permit. *Id.* While these arguments could be framed more directly, their premise ultimately lies with whether the DSPP was the moving force behind the alleged violation of Plaintiff's First Amendment rights.

A policy is the moving force when there is "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001). A municipality is "subject to liability only if the alleged constitutional violations are 'directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability.'" *Robinson v. Hunt Cnty.*, 921 F.3d 440, 449 (5th Cir. 2019) (quoting *Piotrowski*, 237 F.3d at 578). Even if Plaintiff can show a First Amendment violation, he cannot "prevail against a municipality under

§ 1983," unless he "show[s] that the municipality's policy or custom caused the constitutional deprivation." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir. 2009).

In this case, there is no direct causal link between the DSPP and any purported First Amendment violation. By its terms, the challenged policy – DSPP – provides an exception to the City's vending ordinance, § 16-236(b)(2), for those engaging in street performance or busking in the downtown business district. The DSPP's introductory first paragraph encourages noncommercial artistic expression. And the DSPP defines busking as performing for voluntary donations in designated areas. Based on that definition, a street performer's artistic expression in downtown San Antonio does not qualify as a street performance or busking under the DSPP unless conducted in a permitted area, i.e., an area within the downtown business district but not excepted by ¶ 4.1. The DSPP makes busking permissible in areas that the vending ordinance may prohibit. Areas excepted from the defined permitted areas identify locations where the DSPP does not relax the vending ordinance.

Plaintiff may perform for voluntary donations in the downtown areas permitted by the DSPP. If he is not performing for voluntary donations, then the DSPP has no application by its very terms.

In his reply in support of his motion, Plaintiff argues that the DSPP governs performers whether or not they perform for voluntary donations. *See* ECF No. 77 at 1–2. He premises such argument on the view that "Street performers who perform without accepting compensation for performing are just as scrutinized by City officials, employees, and agents as those who perform for voluntary donations under the guise their street performance might be for voluntary donations, or voluntary donations are possible." *Id.* at 2 (emphasis removed). But this premise ignores the reality of the DSPP and is fatally flawed.

First, the DSPP simply does not apply when busking is in an area not permitted by the policy. Thus, in those circumstances, the DSPP provides no basis to scrutinize Plaintiff. Any scrutiny would be based on other ordinances or codes. Second, if the busking is in an area permitted by the DSPP then there is no need to ascertain whether the performer is performing for voluntary donations. The vending ordinance is relaxed in the permitted areas thus making it permissible to busk with or without voluntary donation. As a permitted area, Plaintiff may busk in Travis Park whether or not his performance is for voluntary donations. But this does not exempt him from compliance with other City codes or ordinances. Thus, any scrutiny street performers receive is based on City codes and ordinances in light of the location of the busking.

Plaintiff also contends that even when he "refuses voluntary donations he is still found to be violating the DSPP." *Id.* (citing Dep. Jack 26:06 to 33:45). At his deposition, the City's representative testified at length about the DSPP, the vending ordinance, and other ordinances. But the cited testimony does not support the contention that one violates the DSPP when refusing voluntary donations. And the Court cannot reasonably infer support for that contention even when viewing the evidence in the light most favorable to Plaintiff. The contention misstates the record and is unsubstantiated. In context, the testimony simply does not support finding the DSPP applicable when a performer refuses a voluntary donation. By its terms, the DSPP addresses performances "in designated areas, for voluntary donations." Whether a performer is seeking such donations is immaterial when the performance is in a permitted area and the DSPP does not apply elsewhere.

Plaintiff alleges that he was ousted from Travis Park in December 2020 for an unspecified ordinance violation. TAC ¶¶ 169–81. Plaintiff provides his own affidavit to elaborate on two incidents that month. *See* App'x at 6–7, ¶¶ 8–11. The first incident occurred in Alamo Plaza when a patrol approached him and told him "that the policy prevents [him] from being there," to which Plaintiff said he "was preaching." *Id.* ¶ 8. When Plaintiff asked where he could be, the patrol said

"they were only aware of Travis Park being suitable." *Id*. This incident provides no evidence of a direct causal connection between the DSPP and any First Amendment violation for two potential reasons. One, the DSPP has no applicability in Alamo Plaza. Additionally, the DSPP has no applicability at all if Plaintiff was not busking.

The second incident occurred at Travis Park on December 12, 2020, when officers told him he "could not be there because of the policy, and [he] had to go back to Alamo Plaza." *Id*. ¶ 9. After he informed the officers "that the policy specifically listed Travis Park as a preferred area," an officer said "he was not aware of that and accused [Plaintiff] of violating the law for using amplification." *Id*. When Plaintiff asked to speak to the officer's supervisor, he was directed to another officer. *Id*. When Plaintiff asked the supervisor "what ordinance and what policy was he relying on for his claim that [Plaintiff] could not be at Travis Park," the supervisor "said that [Plaintiff] could not use any amplification and could not be at Travis Park." *Id*. ¶ 10. When Plaintiff refused to identify himself to the officers, the supervisor arrested him and gave him two options— either "take the citation for nuisance or go to jail." *Id*. Plaintiff opted for the citation and "asked the police to make sure their body cams were on to capture the interactions, because [he] got the clear impression, as [he] normally do[es], that police tell [him] to leave because of the street performer policy and not because of any ordinance." *Id*. ¶ 11. The officers "threatened" Plaintiff with "citation or arrest" should he "return to Travis Park and street perform." *Id*.

Plaintiff's speculative impression is not evidence. Although Travis Park is a permitted location for busking under the DSPP, Plaintiff was cited for using amplification. When asked, the officers did not identify the DSPP as the basis for asking Plaintiff to leave. Indeed, directing Plaintiff to Alamo Plaza is inconsistent with application of the DSPP. The City, moreover, has provided a citation issued to Plaintiff on December 12, 2020, at Travis Park for a noise nuisance, using "amplified music in the park without a permit." *See* ECF No. 11-1; ECF No. 68-2 (Ex. 5). The

DSPP in effect at that time did prohibit "amplification of any kind," while also requiring compliance with City Code noise regulations. *See* ECF No. 1-1 (copy of DSPP then in effect). But the December 2020 citation issued to Plaintiff was pursuant to City Code § 21-52 and § 21-58, not the DSPP. *See* ECF No. 11-1; ECF No. 68-2 (Ex. 5). Further, as early as December 22, 2020, the City agreed not to apply the amplification provision, which was removed in early 2021. *See* ECF No. 13 (Notice Re: Policy Change). This Travis Park incident does not show a direct causal connection between the DSPP and any First Amendment violation.

Although the TAC contains no other allegations regarding alleged DSPP violations at Travis Park, Plaintiff provides a November 29, 2021 video as summary judgment evidence that he was kicked out of Travis Park. *See* TP Video. At the outset of that video, Plaintiff introduces two officers who he indicates that he has encountered before, he then says "you got it, private event, no problem," before telling his audience that he needs to go and starts packing his items. *Id*. 00:01 to 00:22. As Plaintiff is packing, one of his companions tells the officers that they do not need a permit because "the culture of their show, it has always been a free show." *Id*. 01:35 to 01:43. The absence of performing for voluntary donation removes the applicability of the DSPP. Plaintiff later states that the officers said they were interrupting the event. *Id*. 03:23 to 03:29. Plaintiff points to no portion of the four-and-a-half-minute video where anyone states that the move resulted from the DSPP, and the Court has heard no such statement.[4] Rather than reflecting that Plaintiff was removed from Travis Park based on the DSPP, the video reflects that the officers told him to leave for reasons unrelated to the DSPP. The City activates Travis Park by putting up Christmas trees, which makes that time period more likely that a busker will be removed from Travis Park, not

---

[4] The Court recognizes that ¶ 6.8 of the DSPP states: "Street Performers are not allowed to perform during a private or community event. Street Performers interested in performing prior to and/or after a private or community event must seek approval by the host of the event." Not only does the DSPP have no enforcement provision as to this restriction, the DSPP has no applicability when a street performer is not performing for voluntary donations.

because of the DSPP, but because of increased police presence and active programming in the park which conflicts with busking performances. *See* Dep. Jack at 1:49:15 to 1:51:50.

The DSPP does not relax the vendor ordinance as to either Market Square or Alamo Plaza. When Plaintiff performs there for voluntary donations he is subject to the vendor ordinance, not the DSPP. And if he performs there purely as a protest or for simple enjoyment, i.e., not for voluntary donations, then the DSPP is inapplicable and any perceived infringement on his First Amendment rights necessarily flows from some other code or ordinance.

In summary, when Plaintiff engages in street performance or busking for voluntary donations in an area designated by the DSPP, the policy permits rather than prohibits such expressive activity. Conversely, when Plaintiff either foregoes performing for voluntary donation or performs in an area outside of those designated by the DSPP, his conduct takes him outside the applicability of the DSPP. Consequently, the challenged policy simply has no direct causal link to Plaintiff's claimed First Amendment violation. And Plaintiff has presented no evidence to carry his burden to show such a direct causal link.

Plaintiff recognizes the City's attempt to persuade the Court that the DSPP has no enforcement provision and is thus never used to prevent Plaintiff from busking and that Plaintiff was never cited for violating the DSPP. ECF No. 75 at 1. Yet, he points to no evidence to the contrary. Instead, he responds that the "City employs pretextual charges, such as noise nuisance or criminal trespass to enforce" the DSPP "to ban buskers, and certain street performers from performing in the vast majority of traditional public spaces in San Antonio's Downtown Center City." *Id*. In reply, the City asserts that Plaintiff did not allege such pretext in his operative pleading, and that absent such an allegation, pretext is not properly before the Court. *See* ECF No. 76 at 2 (citing *Cutrera v. Bd. of Sup's of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

Whether or not pretext is properly before the Court, Plaintiff's position lacks merit. The

perceived "pretextual charges" arise from violations of independent ordinance and code violations. Such violations exist regardless of the DSPP. What Plaintiff perceives to be pretextual reasons for ending or moving his performances is merely the City enforcing other applicable ordinances, which are not challenged in this action. Because Plaintiff has provided no evidence to show the requisite direct causal link, his municipal liability claim against the City necessarily fails.

Plaintiff contends that video deposition of the City's representative supports his position. But when considered in context, the deposition testimony clearly reveals that even if the DSPP applies, street performers must comply with other ordinances and codes and that the DSPP expands areas for busking, as defined in the DSPP. *See* Dep. Jack at 27:30 to 32:31. The DSPP does not apply when the performance is not for voluntary donations, and the City uses other ordinances to enforce the various restrictions of the DSPP. *See id*. 1:47:20 to 1:48:28.

Similarly, Plaintiff's videos regarding denial of a vendor's permit and his protest at Alamo Plaza do not advance his case. The DSPP has no permit requirement and indeed expressly states that those engaging in busking as defined by the DSPP are not required to get a permit. The City has limited types of permits for vending activities, none of which are for busking for donations, even though such activity falls within the vending ordinance. *Id*. 24:30 to 25:17. Further, if conduct takes place outside the areas permitted by the DSPP then the policy simply does not apply. Because Alamo Plaza is excepted from the areas permitted under the DSPP, the policy is not applicable there. The DSPP does not address Plaintiff's changed course of conduct of performing merely as an artistic expression without seeking donations or as a protest. Such conduct is not regulated by the DSPP.

Plaintiff also provides his own affidavit to support his motion. *See* App'x at 5–9. The Court has already considered that part of the affidavit concerning incidents in December 2020 and will not revisit those incidents here.

Plaintiff avers that the City enacted the DSPP in 2017 and it "appeared to expel [him] from downtown parks and plazas." *Id*. ¶ 4. Plaintiff viewed the police as enforcing the policy by stopping his performance and arresting him for "obstructing a sidewalk." *Id*. He further avers that police would tell him that he was not "allowed to street perform because it was a nuisance." *Id*. ¶ 5. He avers that an officer told him "that the policy was difficult to enforce because it was confusing." *Id*. ¶ 7.

But how the DSPP may have appeared to Plaintiff or how he viewed the police actions is not evidence. Nor does such appearance alter the actual terms of the policy. Unsubstantiated beliefs are inadequate to satisfy his summary judgment burden. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

Plaintiff avers that since December 2020 officers threaten him "with citation and arrest by accusing [him] of violating noise nuisance," and when he would inform them that he checks his "decibel levels, which are at 70-78 mb from where the crowd would stand," the officers "would accuse [him] of causing people to block sidewalks, that [he] is pan-handling, or illegally solicit-ing." *Id*. ¶ 12. Each of these violations are enforced through the City's codes and ordinances, not the DSPP.

Plaintiff provides a link to an online video dated January 3, 2021. *See id*. ¶ 13. He states that at the 8:43 mark, an officer threatened him that if he "street performed again at any location, [he] would be cited or arrested for pan-handling or solicitation and [his] belongings would be seized." *Id*. Because Plaintiff's statement regarding this video requires context, the Court has watched the full video (14 minutes and 46 seconds). The Court will summarize some of the video while pinpointing certain video marks.

At the 3:54 mark, the video shows an officer approaching Plaintiff just after Plaintiff so-licited donations from onlookers. The officer starts with "you know you can't be here." At the 4:12

mark, the officer explains an agreement between Plaintiff and the City, further states that the policy does not include Alama Plaza, and points out that Plaintiff is in Alamo Plaza. Between that mark and mark 4:46, the officer explains that "Plaintiff cannot do this," as he points to the ground where Plaintiff's dance mat and donation receptacle are located. At 4:46, the officer states "you cannot be street performing." Plaintiff concedes that he is busking but that he is also protesting. The officer and Plaintiff essentially disagree as to the scope of Plaintiff's agreement with the City, as well as the scope of the policy addressing busking. And at the 8:20 mark, the officer specifically tells Plaintiff that he is violating his agreement with the City. At the 8:43 mark, Plaintiff insists that his conduct is protected by the First Amendment, that he is done taking it, and that he does not intend to stop. The officer then says, "if you do it again, understand that if you do it again" you can be cited and your belongings confiscated. At the 9:40 mark, the officer says Plaintiff has violated a City ordinance concerning panhandling. The officer explains that when Plaintiff asks onlookers for money, he is soliciting in violation of City ordinance. At the 10:29 mark, after Plaintiff complains about harassment, another officer says it is not harassment and informs Plaintiff that individuals at the Alamo called the officers. At the 10:49 mark, the first officer again explains that what Plaintiff is doing is solicitation by definition. At the 11:08 mark, he explains that the City's policy (the DSPP) says that "you can do certain things in certain places," and "the sacred ground of the Alamo Plaza" is not one of the designated areas.

This latter explanation is an accurate and succinct statement of the DSPP. The video clearly shows Plaintiff seeking donations while performing in Alamo Plaza. Because Alamo Plaza is not a permitted area under the DSPP, that policy has no applicability there. Officers, of course, may enforce the City's codes and ordinances, including those related to vending, soliciting, and panhandling.

The Court does not view the asserted pretextual premise as advancing Plaintiff's challenge.

18

The DSPP has no enforcement mechanism and does not hinder expression, it instead relaxes the City's vending ordinance to permit busking for voluntary donations in areas that the vending ordinance would otherwise prohibit. The DSPP does not address performances unless they are for voluntary donations. Viewing the evidence in the light most favorable to the non-movant, the Plaintiff with respect to the City's motion, the Court finds no genuine dispute of material fact as to the required direct causal link. Plaintiff has not provided evidence to show the required connection between the DSPP and any First Amendment violation.

At most, Plaintiff's evidence reveals that some officers may have been confused as to which City policy may have prohibited Plaintiff's performances. But "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Municipalities cannot be found "vicariously liable under § 1983 for their employees' actions." *Id*.

**B. First Amendment**

Given the lack of direct causal connection between the DSPP and Plaintiff's alleged First Amendment violations, the Court has no need to consider whether that policy violates his constitutional rights. Courts do not lightly tread into areas of constitutional dimensions. And it will not do so here.

Still, it is apparent that Plaintiff lacks a full understanding of the complexities of First Amendment law. While he may think or believe that the City is violating his First Amendment rights, it has long been "well understood that the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. State of N.H.*, 315 U.S. 568, 571 (1942). Thus, while the Supreme Court has recognized that "live entertainment, such as musical and dramatic works fall within the First Amendment guarantee," *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981), that does not mean that Plaintiff can perform in all places at all times.

19

The nature of Plaintiff's chosen forum is crucial. This case concerns Alamo Plaza, Market Square, and Travis Park. *See* TAC ¶¶ 4–5, 17, 83, 105, 130–33, and 166–68. Plaintiff contends that these are public forums, whereas the City argues that Alamo Plaza and Market Square are nonpublic forums, *see* ECF No. 68 at 10–14. The City argues that the DSPP identifies Travis Park as a preferred place for busking; thus making it available to Plaintiff without permit and for compensation unless the City has programmed its own events for the park or another group has reserved the park. ECF No. 68 at 11 & n.11. But even if each of these locations are quintessential public forums, a matter not decided here, Plaintiff's right to perform and express himself is not absolute. While the City may have valid arguments that Alamo Plaza and Market Square are not quintessential public forums, even public forums present a spectrum of locations impacting the standard of review. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n [hereinafter Perry]*, 460 U.S. 37, 45–46 (1983).

When a case involves quintessential public forums and a policy that does not prohibit all communicative activity, courts rigorously scrutinize efforts to exclude speakers. *See id.* But as set out in *Perry*, it is permissible to enforce content-neutral restrictions on the time, place, and manner of expression, so long as the restrictions "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *See id.* at 345 n.9. Plaintiff tries to convince the Court that the DSPP restricts speech on the basis of content because according to Plaintiff "[t]he restrictions plainly apply based on the subject matter and purpose of a street performer's message, i.e., whether they wish to receive voluntary donations." ECF No. 72 at 15. But as the Court has discussed and analyzed, the DSPP does no such thing. The DSPP is content neutral and would thus be analyzed under the less-rigorous time, place, or manner framework.

While Plaintiff may dispute it, the DSPP identifies permitted areas for busking in downtown San Antonio—defined as the Central Business District. Through stated exceptions to the

20

permitted areas, the DSPP identifies downtown areas that it has no applicability. For purposes of the DSPP, busking is defined particularly as "performing in designated areas, for voluntary donations." While this definition may differ from the general use of the term by performers, such as Plaintiff, or even police officers who might speak more generally or loosely, the definition still controls for purposes of the DSPP.

Plaintiff is clearly passionate about the First Amendment. But like many legal issues, First Amendment law is often subject to over generalizations that do not recognize its many nuances. The First Amendment is not so simple as "I have this right, so I can exercise it wherever, whenever, or however I want." The Court sets out the general legal principles of First Amendment law, not to make any final determination as to any alleged violation, but to highlight nuances that provide context versus over generalizations.

## VI. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks summary judgment on grounds that the DSPP is "unconstitutional under the First Amendment to the U.S. Constitution because its selective enforcement based on content imposes unconstitutional restraint on certain types of street performers while allowing others to perform without consequence." ECF No. 72 at 1. Because Plaintiff has not carried his burden to present evidence of a direct causal connection between the challenged policy and his alleged First Amendment violations, he is not entitled to summary judgment on his municipal liability claim against the City of San Antonio. Plaintiff's motion is premised entirely on the alleged unconstitutionality of the challenged policy without making the necessary showing required for a municipal liability claim.

## VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Summary Judgment (ECF No. 68) filed by the City of San Antonio and **DENIES** the Motion for Summary Judgment (ECF

No. 72) filed by Plaintiff. By separate document, the Court will issue a Final Judgment in favor of the City.

      **SIGNED this 25th day of February 2025.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**